JOHN W. BERRY (Cal Bar No. 295760)
Email:  berryj@sec.gov
MANUEL VAZQUEZ (Cal. Bar No. 295576)
Email:  vazquezm@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
John W. Berry, Associate Regional Director
Amy Jane Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>          Applicant,<br><br>   vs.<br><br>SAINT JAMES HOLDING AND INVESTMENT COMPANY TRUST and JEFFRE JAMES aka ELDER JEFFRE SAINT JAMES,<br><br>       Respondents. | Case No. 2:18-mc-00135<br><br>**SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS APPLICATION FOR AN ORDER TO SHOW CAUSE AND APPLICATION FOR AN ORDER COMPELLING COMPLIANCE WITH INVESTIGATIVE SUBPOENAS** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................ 1

      A.   The SEC's Formal Order of Investigation ..................................... 1

      B.   Possible "Pump-and-Dump" Scheme in Cherubim Stock ........................... 2

      C.   The SEC's June 2018 Subpoenas ...................................................... 5

      D.   Respondents' Failure to Produce Any Documents ................................. 5

III.  ARGUMENT ............................................................................................. 7

      A.   This Court Has Jurisdiction to Enforce the SEC's Validly-Issued June 2018 Subpoenas in a Summary Proceeding ................................. 7

      B.   The SEC's June 2018 Subpoenas Should Be Enforced .............................. 8

      C.   Respondents Have No Valid Basis for Their Refusal to Comply with the June 2018 Subpoenas ......................................... 12

IV.   CONCLUSION........................................................................................ 12

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Administrator, U.S. EPA v. Alyeska Pipeline Serv. Co.*,
   836 F.2d 443 (9th Cir. 1998) ...................................................................11

*EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*,
   719 F.2d 1426 (9th Cir. 1983) .................................................................10

*EEOC v. Karuk Tribe Housing Auth.*,
   260 F.3d 1071 (9th Cir. 2001) .................................................................10

*EEOC v. St. Regis Paper Co.-Kraft Div.*,
   717 F.2d 1302 (9th Cir. 1983) ...................................................................7

*Endicott Johnson v. Perkins*,
   317 U.S. 501 (1943)...................................................................................11

*Flatt v. SEC*,
   2010 U.S. Dist. LEXIS 48571 (S.D. Fla. Apr. 14, 2010)........................10

*FTC v. Carter*,
   464 F. Supp. 633 (D.D.C. 1979)................................................................8

*In the Matter of an Application to Enforce Administrative Subpoena of the SEC
   v. Bobby Jones*,
   Case No. CV 13-08314 DDP (Ex), 2013 WL 6536085 (C.D. Cal. Dec.
   13, 2013).................................................................................................8, 9

*Nelson v. SEC*,
   2008 U.S. Dist. LEXIS 51035,
   2008 WL 244794 (N.D. Cal. June 16, 2008)...........................................10

*Neuhaus v. SEC*,
   2007 WL 1322340 (E.D. Cal. May 4, 2007) ...........................................10

*Resolution Trust Corp. v. Feffer*,
   795 F. Supp 1223 (D.D.C. 1992)...............................................................8

*Rosiere v. SEC*,
   2010 WL 489526 (D. Nev. Feb. 5, 2010)................................................10

*SEC v. Blackfoot Bituminous, Inc.*,
   622 F.2d 512 (10th Cir. 1980) ............................................................9, 12

*SEC v. Brigadoon Scotch Distributing Co.*,
   480 F.2d 1047 (2d Cir. 1973) .......................................................8, 11, 12

*SEC v. Howatt*,
   525 F.2d 226 (1st Cir. 1975).....................................................................10

*SEC v. Jerry T. O'Brien, Inc.*,
   467 U.S. 735 (1984)....................................................................................9

ii

*SEC v. McCarthy,*
   322 F.3d 650 (9th Cir. 2003) .................................................................8

*SEC v. Sprecher,*
   594 F.2d 317 (2d Cir. 1979) .................................................................8

*U.S. v. Firestone Tire & Rubber Co.,*
   455 F. Supp 1072 (D.D.C. 1978) ..........................................................8

*United States v. Church of Scientology of Cal.,*
   520 F.2d 818 (9th Cir. 1975) ...........................................................8, 10

*United States v. Jose,*
   131 F. 3d 1325 (9th Cir. 1997) .........................................................9, 12

*United States v. Powell,*
   379 U.S. 48 (1964) .................................................................................9

**Securities Act of 1933**

Section 19(b)
   [15 U.S.C. § 77s(b)] ..............................................................................2

Section 19(c)
   [15 U.S.C. §77s(c)] .............................................................................11

Section 20t(a)
   [15 U.S.C. §77t(a)] ................................................................................9

Section 22(b)
   [15 U.S.C. § 77v(b)] ...........................................................................7, 8

**Securities Exchange Act of 1934**

Section 21(b)
   [15 U.S.C. § 78u(b)] .....................................................................2, 9, 11

Section 21(c)
   [15 U.S.C. § 78u(c)] ...........................................................................7, 8

Section 21(e)
   [15 U.S.C. § 78u(e)] ..............................................................................8

**FEDERAL REGULATIONS**

17 C.F.R. § 200.30-4(a)(1) ......................................................................11

I.      **INTRODUCTION**

The Securities and Exchange Commission ("SEC") asks this Court to compel Respondents Saint James Holding and Investment Company Trust ("St. James Trust") and its sole trustee, Jeffre James, to produce documents in response to two SEC investigative subpoenas issued on June 21, 2018.  These subpoenas relate to an ongoing, nonpublic investigation by the SEC to determine whether certain individuals or entities may have engaged in a potential "pump-and-dump" scheme in the stock of Cherubim Interests, Inc. ("Cherubim"), among other microcap companies. Information obtained in the SEC's investigation suggests that, to "pump" the price of its stock, Cherubim issued false public statements in January 2018 claiming that the company had executed a $100,000,000 financing commitment to launch an initial coin offering ("ICO") for St. James Trust.  Cherubim's stock price and trading volume then soared on this news, as is typical in "pump-and-dump" schemes, and certain individuals associated with the company then "dumped" their overvalued Cherubim stock for significant profits.

As part of its investigation, the SEC issued the June 2018 subpoenas to the Respondents to determine, among other things, whether Cherubim's statements about its $100 million financing commitment were true or not.  The Respondents, however, have not produced a single document to the SEC.  Nor have they even attempted to contact SEC counsel to discuss the subpoenas.  Instead, despite repeated attempts to contact them, the Respondents have ignored the SEC altogether.  Therefore, the SEC now asks the Court to intervene, and compel the Respondents to respond.

II.     **STATEMENT OF FACTS**

A.      **The SEC's Formal Order of Investigation**

On March 16, 2018, the SEC issued an Order Directing Private Investigation and Designating Officers to Take Testimony in an investigation titled *In the Matter of Cherubim Interests, Inc. and Certain Other Microcap Issuers* (SEC File No. LA-4898) ("Formal Order").  *See* Declaration of Manuel Vazquez ("Vazquez Decl.") ¶ 4,

Ex. 1.  Among other things, the Formal Order empowers the SEC staff to investigate whether certain individuals and entities violated the antifraud and registration provisions of the federal securities laws in connection with numerous penny-stock companies.  The order identifies the names of these companies, including Cherubim, whose name is in the order's caption.  The order also designates and authorizes certain SEC staff to issue subpoenas in this investigation to obtain documents and to take testimony.  *See id.*; 15 U.S.C. §§ 77s(b), 78u(b).

The two June 2018 subpoenas that are the subject of this application were issued pursuant to this Formal Order and are part of the SEC's investigation of trading in Cherubim stock.

### B.    Possible "Pump-and-Dump" Scheme in Cherubim Stock

Through its investigation, the SEC staff obtained evidence that certain persons may have carried out a "pump-and-dump" scheme in Cherubim stock.  In a pump-and-dump scheme, the fraudsters artificially inflate the price and trading volume of the stock they hold, often by publicly disseminating positive but often false information about a stock to "pump" the price higher.  *See* https://www.sec.gov/fast-answers/answerspumpdumphtm.html.  The operators then "dump" their overvalued shares, earning a profit resulting from their fraudulent conduct.  The price of the stock then falls, and those investors who continue to hold the stock lose money.[1]

The "pump" in the pump-and-dump scheme here was carried out through at least two public announcements by Cherubim—a January 3, 2018 press release and a report on Form 8-K dated January 31, 2018.  *See* Vazquez Decl. ¶¶ 7-8, Exs. 2-3.  The press release and Form 8-K both refer to the Respondent, St. James Trust, and its

---

[1] Orchestrators of pump-and-dump schemes generally manipulate the stock of thinly traded companies, like Cherubim.  *See* https://www.sec.gov/reportspubs/investor-publications/investorpubsmicrocapstockhtm.html.  The price of their stock is easier to manipulate than more widely held stock because the volume of trading is generally lower and there is usually much less reliable information about the stock publicly available.

alleged ICO.  An ICO is a way for a company to raise capital by issuing and offering for sale virtual coins or tokens.  *See id*. ¶ 9, Ex. 4 (SEC investor bulletin regarding ICOs).  According to Cherubim's January 3rd press release, the company had "executed a financing commitment of $100,000,000 to launch" that offering for the St. James Trust token, apparently called "The Self Sustaining Intentional Communities Coin."  *See id*. ¶ 7, Ex. 2.  Similarly, in a January 31st Form 8-K report filed with the SEC, Cherubim restated its commitment to raise $100 million for St. James Trust's ICO, and attached a purported memorandum of understanding with St. James Trust that stated Cherubim would be an "Investor in SJT [St. James Trust]" and had "[a]gree[d] to "[p]urchase $100,000,000 SJT Coins."  *Id*. ¶ 8, Ex. 3.[2]

According to St. James Trust's website and "white paper" (a document that often accompanies ICOs and describes the token and business being offered), the St. James Trust token is an investment in cooperative living communities.  *See id*. ¶ 10, Ex. 5.  As Cherubim's press release described it, "[t]he St. James Trust Cryptocurrency is designed for cooperative living, working and healthier lives and offers extensible diversity in the use of the coin over current coins like Bitcoins for both financial and societal gain."  *Id*. ¶ 7, Ex. 2.  St. James Trust's ICO materials also claim its token is a revenue-sharing opportunity that can appreciate in value if the tokens are sold on secondary markets.  *See id*. ¶ 10, Ex. 5.  These materials also state that St. James Trust is offering 500 million coins at $1 per coin.  *See id*.

Following the January 3rd press release and the January 31st Form 8-K report, Cherubim's stock price and trading volume increased.  *See id*. ¶ 11.  Indeed, after the January 3rd press release, Cherubim's stock price jumped 250% the next day; the volume of trading in its stock soared 5,168%.  *See id*.  After the Form 8-K report,

---

[2] The Cherubim press release and Form 8-K also claimed the company had agreed to acquire $250 million in assets from another entity.  *See* Vazquez Decl., ¶¶ 7-8, Exs. 2-3.

Cherubim's stock price similarly increased 14.3% the next day, and trading volume jumped 237%. *See id.* The SEC has evidence suggesting that soon after these Cherubim stock price increases, individuals associated with Cherubim sold Cherubim stock. *See id.* ¶ 12. Because of the SEC's concern over the inaccuracy over Cherubim's disclosures and the possibility that its stock was manipulated in a "pump and dump" scheme, the SEC suspended trading in the securities of Cherubim and other microcap issuers on February 15, 2018 for ten business days. *See id.* ¶ 13, Ex. 6 (order suspending trading because of "concerns regarding the accuracy and adequacy of information in the marketplace about, among other things, . . . [Cherubim]'s execution of a financing commitment to launch an initial coin offering"); *see also id.* ¶ 14, Ex. 7 (release).

Based on the SEC's investigation, there is reason to believe that Cherubim's statements about St. James Trust's ICO and its $100 million "financing commitment" for the ICO—the public "pump" of the company's stock—were false. For one, the St. James Trust coin does not appear to have even existed when Cherubim announced its supposed "financing." The coin itself does not appear on any websites that track existing cryptocurrency coins in January or February 2018. *See id.* ¶15. Moreover, St. James Trust's own website raises serious questions about whether Cherubim actually invested the $100 million it claimed it would invest in the St. James Trust coin. On January 23, 2018, the website said that St. James Trust had sold 100 million coins, and a week later said it had only sold 25,600 coins. *See id.* ¶¶ 16-17, Exs. 8-9. But as recently as September 2018, the website says that all 500 million of its coins are still available—that is, not a single coin had yet been sold. *See id.* ¶ 18, Ex. 10. So either Cherubim did not buy any coins at all and thus never invested or, at a price of $1 per coin, it invested only about $25,600—a far cry from the $100 million it had claimed. Finally, the evidence shows Cherubim could not have made this financing even it had wanted to. Its finances are in such disarray that, as of September 2017, and according to its own financial statements, Cherubim only had $513,411 in assets

and incurred a net loss of about $2.78 million for the nine months ending May 31, 2017. *See id.* ¶ 19, Ex. 11.

### C.    The SEC's June 2018 Subpoenas

Given Cherubim's potentially false or misleading statements concerning its financing of St. James Trust's ICO, the SEC issued document subpoenas to St. James Trust and James, the sole trustee of the trust, on June 21, 2018. *See id.* ¶ 20, Exs. 12-13. The June 2018 subpoenas were signed by SEC staff designated in the Formal Order to investigate Cherubim. *See id.* ¶¶ 3-5. The subpoena to St. James Trust was sent to its business address listed on its website, and a copy of the subpoena was also sent to the address for its registered agent. *See id.* ¶ 20. And the subpoena to James was sent to what SEC counsel understands, based on research conducted by SEC staff, is his home address. *See id.* ¶ 20. All subpoenas were delivered via United Parcel Service ("UPS") overnight delivery in accordance with the SEC's Rules of Practice. *See id.* ¶ 21, Ex. 14.

The June 2018 subpoenas were tailored directly to find information about St. James Trust. They requested documents concerning: (a) Cherubim's representations in its press releases and SEC filing concerning St. James Trust and its ICO; (b) financing commitments made by Cherubim to launch the St. James Trust ICO; (c) St. James Trust's business operations; (d) Respondents' communications with Cherubim representatives; (e) Respondents' money or asset transactions concerning Cherubim; and (f) communications to or from Respondents with a specified list of individuals and entities concerning Cherubim. *See id.* ¶ 20, Exs. 12-13.

### D.    Respondents' Failure to Produce Any Documents

St. James Trust and James were required to produce all documents responsive to the subpoenas to the SEC by July 6, 2018. *See id.*, ¶ 20, Exs. 12-13.[3] The

---

[3] Because of a typographical error, the July 2018 subpoenas include a document production deadline of March 3, 2017, instead of July 6, 2018. As explained further below, all further correspondence with Respondents references the correct July 6,

Respondents have yet to produce a single document in response to the subpoenas, and neither of them has contacted SEC counsel.  *See id.* ¶ 30.

On July 16th, SEC counsel left a message for James at his St. James Trust phone number.  *See id*. ¶ 22.  In that message, SEC counsel made it clear that no documents had been produced in response to either one of the subpoenas and asked James to return the call.  *See id*.  SEC counsel made a follow-up call to James later that day, but could not complete the call because counsel received an automated message stating that calls could no longer be made to this number.  *See id*.  Using a different SEC telephone number immediately after, SEC counsel called James and successfully left another message requesting him to contact SEC counsel.  *See id*.  The SEC did not receive a response.  *See id*.  SEC counsel made follow up phone calls to James on July 19th and July 24th, each time leaving a message requesting that James return the call.  *See id*. ¶ 23.  After these phone calls, on August 8, 2018, the subpoena issued to St. James Trust's business address was returned to the SEC.  The UPS shipping label stated: "RETURN TO SHIPPER," "RECEIVER DID NOT ORDER, REFUSED."  *Id*. ¶ 24, Ex. 15.

On August 14, 2018, SEC counsel emailed James at his St. James Trust email address, which was listed on St. James Trust's white paper.  *See id*. ¶ 25, Ex. 16.  In that email, SEC staff explained that if James failed to produce documents responsive to the subpoenas by August 24, 2018, the SEC would proceed to compel production.  *See id*.  After receiving no response to that email, SEC counsel sent a second email on August 16, to James's St. James trust email address, and also sent to various other email addresses for James the SEC located, informing James that if he failed to produce the requested documents by the August 24th deadline, the SEC may seek

---

2017 deadline.  Indeed, the SEC extended the document production deadline several times, and yet Respondents have not contacted SEC counsel and have not produced any responsive documents.

1    court intervention.  To date, James has never responded to either email.  *See id.*

2         Out of an abundance of caution, on September 4, 2018, SEC counsel had James

3    personally served, in his individual capacity and as St. James Trust's sole trustee,

4    with copies of the June 2018 subpoenas.  *See id.* ¶ 26, Exs. 17-18. Additionally, on

5    September 6, 2018, SEC counsel informed James via email and overnight UPS letter

6    that if Respondents failed to produce the requested documents by September 20,

7    2018, the SEC would proceed with a subpoena enforcement action against

8    Respondents.  *See id.* ¶ 27, Ex. 19.  SEC counsel received a UPS delivery

9    confirmation of its September 6, 2018 letter (*See id.* ¶ 27, Ex. 20), but Respondents

10   did not respond to the email or the letter.  *See id.* ¶ 30.  As of the date of this filing,

11   neither Respondent has contacted SEC counsel, nor has the SEC received any

12   documents responsive to the June 2018 subpoenas.  *See id.*

13   **III.   ARGUMENT**

14        Respondents' ongoing and outright refusal to provide documents responsive to

15   the SEC's June 2018 subpoenas is obstructing the SEC's investigation of potential

16   securities laws violations.  Accordingly, the SEC asks the Court to compel the

17   Respondents to respond to the subpoenas and produce all responsive documents.

18        **A.   This Court Has Jurisdiction to Enforce the SEC's Validly-Issued**

19             **June 2018 Subpoenas in a Summary Proceeding**

20        When subpoenaed parties, such as Respondents, refuse to comply with SEC

21   investigative subpoenas issued in the course of an investigation, the SEC is authorized

22   to seek court orders compelling compliance.  *See* 15 U.S.C. § 77v(b); 15 U.S.C.

23   § 78u(c).  Section 22(b) of the Securities Act and Section 21(c) of the Exchange Act

24   explicitly grant jurisdiction over these subpoena enforcement proceedings to district

25   courts.  *Id.*

26        The court may grant an application to enforce an investigative subpoena in a

27   summary proceeding, like the one sought here by the SEC.  *EEOC v. St. Regis Paper*

28   *Co.-Kraft Div.*, 717 F.2d 1302, 1304 (9th Cir. 1983) ("[a] subpoena enforcement action

1    is a summary procedure" with no discovery absent "exceptional circumstance"); *see*

2    *also SEC v. McCarthy*, 322 F.3d 650, 655-59 (9th Cir. 2003) (Section 21(e) of the

3    Exchange Act permits court to enforce a SEC subpoena in summary proceeding "upon

4    application from the Commission"); *SEC v. Sprecher*, 594 F.2d 317, 319-20 (2d Cir.

5    1979) (Section 22(b) of the Securities Act permits courts to enforce a subpoena in

6    summary proceeding "upon application by the Commission"); *United States v. Church*

7    *of Scientology of Cal*., 520 F.2d 818, 821 (9th Cir. 1975) ("a district court may limit the

8    application [of the Federal Rules of Civil Procedure] in a proceeding to enforce a

9    summons which is intended to be a summary proceeding").  This summary procedure,

10   rather than an action instituted by complaint, is appropriate because investigative

11   agencies, like the SEC, "must be free without undue interference or delay to conduct an

12   investigation which will adequately develop a factual basis for a determination as to

13   whether particular activities come within the Commission's regulatory authority."  *SEC*

14   *v. Brigadoon Scotch Distrib. Co*., 480 F.2d 1047, 1053 (2d Cir. 1973).

15           Moreover, a SEC subpoena enforcement action may be brought in any federal

16   court "within the jurisdiction of which such investigation or proceeding is carried on."

17   15 U.S.C. § 78u(c).  Therefore, even though the Respondents appear to be located in

18   Louisiana, venue is proper in this district because the SEC's Los Angeles Regional

19   Office is exclusively carrying out the investigation and issued the subpoenas that are the

20   subject of this application.  *See In the Matter of an Application to Enforce Admin.*

21   *Subpoena of the SEC v. Bobby Jones*, Case No. CV 13-08314 DDP (Ex), 2013 WL

22   6536085, at *2 (C.D. Cal. Dec. 13, 2013) (denying motion to change venue in subpoena

23   enforcement action); *see also Resolution Trust Corp. v. Feffer*, 795 F. Supp 1223, 1224

24   (D.D.C. 1992) (denying motion to change venue for subpoena enforcement

25   proceeding); *U.S. v. Firestone Tire & Rubber Co.*, 455 F. Supp 1072, 1078 (D.D.C.

26   1978) (similar); *FTC v. Carter*, 464 F. Supp. 633, 637 (D.D.C. 1979) (similar).

27       **B.     The SEC's June 2018 Subpoenas Should Be Enforced**

28           For an administrative agency's investigation subpoena to be judicially enforced,

8

the agency must show:  (1) its "investigation will be conducted pursuant to a legitimate purpose," (2) the subpoena seeks information that "may be relevant to the purpose," (3) "the information sought is not already within the [SEC's] possession," and (4) all "administrative steps required … have been followed."  *United States v. Powell*, 379 U.S. 48, 57-58 (1964) (enforcing IRS subpoena); *see also United States v. Jose*, 131 F. 3d 1325, 1327-28 (9th Cir. 1997) (quoting *Powell*); *SEC v. Blackfoot Bituminous, Inc.*, 622 F.2d 512, 513-14 (10th Cir. 1980).  Courts routinely grant relief in SEC subpoena enforcement proceedings upon the requisite showing.  *See, e.g.*, *SEC v. Bobby Jones*, 2013 WL 6536085, at *2; *In the Matter of an Application to Enforce Administrative Subpoena of the SEC v. Alicia Bryan,* Case No. CV13-1870-GAF (C.D. Cal. May 6, 2013), Dkt. No. 14, Vazquez Decl., ¶ 28, Ex. 21 (ordering compliance with SEC administrative subpoena); *In the Matter of an Application to Enforce Administrative Subpoena of the SEC v. Concept Capital Group, Inc. et al.,* Case No. 13 CV 116-GMN (D. Nev. Mar. 12, 2013), Dkt. No. 16, Vazquez Decl., ¶ 28, Ex. 22 (same).

All four requirements are met in this case.  First, this investigation is being conducted pursuant to a lawfully authorized and legitimate purpose.  "The provisions vesting the SEC with power to issue and seek enforcement of subpoenas are expansive."  *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 743 (1984).  To help protect investors, Congress "vested the [SEC] with broad authority to conduct investigations into possible violations of the federal securities laws and to demand production of evidence relevant to such investigations."  *Id.* at 741.  This authority includes the power to "subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records which the Commission deems relevant or material to the inquiry."  15 U.S.C. § 78u(b); *see also* 15 U.S.C. § 77t(a).

Here, the SEC has exercised its broad statutory authority to investigate, among other things, whether the antifraud or other provisions of the federal securities laws have been or are being violated in connection with potentially false or misleading

public statements in Cherubim's public statements.  On March 16, 2018, the SEC issued a Formal Order, authorizing the investigation.  On June 21, 2018, in the course of the investigation, the SEC subpoenaed the Respondents, seeking evidence relevant to the investigation.  The SEC's investigation and these subpoenas are thus within the scope of the Formal Order and the SEC's authorized law-enforcement powers.

Second, the information sought by the June 2018 subpoenas is relevant to the SEC's investigation.  The subpoenas seek information relating to whether Cherubim made false or misleading statements about St. James Trust, including in an SEC filing, as part of a potential "pump and dump" scheme, and whether the Respondents had any involvement in such scheme.  To subpoena documents as it conducts an investigation, the SEC need not make out a "probable" or "reasonable" cause showing.  *SEC v. Howatt*, 525 F.2d 226, 229 (1st Cir. 1975); *see also Church of Scientology of Cal.*, 520 F.2d at 821 (federal agency "need not meet any standard of probable cause to obtain enforcement of its summons").  In the context of an administrative investigation, "the notion of relevancy is a broad one.  An agency can investigate merely on the suspicion that the law is being violated, or even just because it wants assurance that it is not.  So long as the material requested touches a matter under investigation, an investigative subpoena will survive a challenge that the material is not relevant."  *Flatt v. SEC*, 2010 U.S. Dist. LEXIS 48571, at *11 (S.D. Fla. Apr. 14, 2010); *see also Neuhaus v. SEC*, 2007 WL 1322340, at *3 (E.D. Cal. May 4, 2007); *Rosiere v. SEC*, 2010 WL 489526, at *3 (D. Nev. Feb. 5, 2010).

The relevancy required to enforce an investigative subpoena is therefore much broader than in litigation.  *See Nelson v. SEC*, 2008 U.S. Dist. LEXIS 51035, at *4-5, 2008 WL 244794, at *2 (N.D. Cal. June 16, 2008).  The Ninth Circuit has noted that "'[t]he scope of the judicial inquiry in an . . . agency subpoena enforcement proceeding is quite narrow.'"  *EEOC v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1076 (9th Cir. 2001) (quoting *EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir. 1983) (en banc)).  Thus, a court "must enforce investigative subpoenas unless

10

1   the evidence sought by the subpoena [is] plainly incompetent or irrelevant to any lawful

2   purpose of the agency."  *Endicott Johnson v. Perkins*, 317 U.S. 501, 509 (1943); *see*

3   *also Adm'r, U.S. EPA v. Alyeska Pipeline Serv. Co.*, 836 F.2d 443, 447 (9th Cir. 1998);

4   *Brigadoon Scotch Distrib.*, 480 F. 2d at 1055.

5        The minimal relevance required to enforce these investigative subpoenas is easily

6   satisfied here.  The SEC is investigating whether there have been violations of the

7   federal securities laws when parties disseminated false or misleading public statements

8   in Cherubim's press releases and in an SEC filing about St. James Trust.  These

9   subpoenas seek the basic information necessary to determine whether there was fraud

10  and, if so, who was involved in it and how it was conducted.  Given Cherubim's

11  potentially false or misleading statements concerning its financing of St. James Trust's

12  ICO, the SEC June 2018 subpoenas meet the relevance requirement to its lawful

13  investigation.

14       Third, the documents sought are not in the SEC's possession.  Despite several

15  requests by SEC counsel, the Respondents have produced no documents.  St. James

16  Trust and James have possession of their communications with specific individuals or

17  entities, their documents regarding their business operations, and any money or asset

18  transactions concerning Cherubim.

19       Fourth, the SEC has satisfied all of the administrative prerequisites.  The federal

20  securities laws authorize the SEC to require the production of any books, papers, or

21  other documents which the SEC deems relevant or material to its investigation.  *See* 15

22  U.S.C. § 77s(c), 15 U.S.C. § 78u(b).  Here, the June 2018 subpoenas were issued

23  pursuant to a Formal Order and signed by an SEC attorney who is specifically

24  designated by the Formal Order to issue subpoenas.  *See* 17 C.F.R. § 200.30-4(a)(1).

25  The SEC delivered multiple copies of the June 2018 subpoenas to the Respondents—

26  once by UPS, another by email, and a third time by process server.   Yet the

27  Respondents failed to respond.

28

1
2

**C.     Respondents Have No Valid Basis for Their Refusal to Comply with the June 2018 Subpoenas**

3
4
5
6
7
8
9
10

Because the SEC has established that its subpoenas were lawfully issued, the burden shifts to Respondents to establish an affirmative defense for failing to comply with the subpoenas.  The Respondents bear a heavy burden when "the agency inquiry is authorized by law and the materials sought are relevant to the inquiry."  *Brigadoon Scotch Distrib.*, 480 F.2d at 1056; *see also United States v. Jose*, 131 F.3d at 1328 (after *prima facie* case made to enforce investigative summons, heavy burden fell on respondent); *Blackfoot Bituminous*, 622 F.2d at 515 (respondent has burden of showing a defense to enforcement).

11
12
13
14

The Respondents will not be able to meet this high burden.  There is simply no justifiable excuse for not responding in any way to the SEC or its subpoenas, other than returning one copy of the subpoena package to the SEC because Respondent "REFUSED" the subpoena.

15

**IV.     CONCLUSION**

16
17
18
19
20
21
22

Accordingly, the SEC requests that the Court grant this application and issue: (i) an order, in the form submitted, requiring Respondents to show cause for why they should not be ordered to comply with the subpoenas; (ii) if Respondents fail to show adequate cause to support their refusal to comply with the subpoenas, an order requiring them to immediately comply with the subpoenas to produce all responsive documents; and (iii) such other and further relief as may be necessary and appropriate to achieve compliance with the subpoenas directed to Respondents.

23
24

Dated:  October 5, 2018                           Respectfully submitted,

25
26
27

*/s/ Manuel Vazquez*
John W. Berry
Manuel Vazquez
*Attorneys for Plaintiff*
*Securities and Exchange Commission*

28

12